Sealed

FILED by _____ D.C.

JAN 12 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF FLORIDA
2                  MIAMI DIVISION
           CASE NO.  07-20794-CR-LENARD

3

4

5   UNITED STATES OF AMERICA,

6                  Plaintiff,

7        vs.

8                                    Miami, Florida
                                     August 20, 2010
9   CARLOS MARIO JIMENEZ NARANJO,

10                 Defendant.
    _____

11                      TRANSCRIPT OF
                   CHANGE OF PLEA HEARING
12          BEFORE THE HONORABLE JOAN A. LENARD
                UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15   FOR THE PLAINTIFF:
                          *United States Attorney's Office*
16                        BY:  ALEJANDRO SOTO, A.U.S.A.
                          99 N.E. 4th Street
17                        Miami,  Florida 33132

18
     FOR THE DEFENDANT:
19                        BY:  HUGO RODRIGUEZ, ESQ.
                          BY:  DAVID RODRIGUEZ, ESQ.
20                        1210 Washington Avenue
                          Suite 245
21                        Miami Beach, Florida 33139

22

23
     REPORTED BY:         DAWN M. WHITMARSH, RPR
24                        Official Court Reporter
                          400 N. Miami Avenue, 10S03
25                        Miami, Florida  33128
                          Telephone:  305-523-5598

           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED BY COMPUTER

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE COURT:  United States of America versus Carlos

3    Mario Jimenez Naranjo, case number 07-20794.

4          Good morning, counsel.  State your appearances please

5    for the record, and pursuant to the order entered by the Court

6    previously, this hearing is sealed.

7          MR. SOTO:  Good morning, Your Honor.  Alex Soto on

8    behalf of the United States.

9          THE COURT:  Good morning.

10         MR. RODRIGUEZ:  Good morning, Your Honor.  Hugo

11   Rodriguez and David Rodriguez on behalf of Mr. Jimenez, who's

12   present before the Court, who will rely on a court certified

13   translator who has expertise.

14         Also on behalf of the defendant in the courtroom before

15   the Court is Maria Leon, our investigator in this matter.

16         THE COURT:  Good morning.  And he is set for a change

17   of plea, correct?

18         MR. RODRIGUEZ:  He is, Your Honor, and the parties have

19   executed a plea agreement and another letter agreement.

20         THE COURT:  Okay.  I'll have the plea agreement,

21   please, if you would pass it up?

22         Mr. Soto, you can have the letter agreement back,

23   please.

24         I'm just reviewing the plea agreement, and in paragraph

25   one, there is a write-in that it's the second superseding

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1 indictment.  When was the second superseding indictment filed?

2   MR. SOTO:  The indictment was returned yesterday and

3 Mr. Jimenez Naranjo was arraigned on it yesterday afternoon at

4 1:30, Your Honor.

5   THE COURT:  Okay.  It's not in the system.  Is it

6 there?

7   COURTROOM DEPUTY:  Okay.  Is it sealed?

8   MR. SOTO:  It was not filed under seal, no.  But I was

9 present when the indictment was returned to Magistrate Judge

10 Simonton, and I confirmed that he was in fact arraigned on it

11 yesterday.

12   MR. RODRIGUEZ:  I have a copy.

13   THE COURT:  I believe your representations, it hasn't

14 hit CM/ECF which I don't quite understand.  Maybe -- what time

15 was it returned?

16   MR. SOTO:  Returned at 12 and he was arraigned at 1:30.

17   MR. RODRIGUEZ:  We're trying to be efficient, Your

18 Honor.

19   THE COURT:  Okay.  It shows the arraignment?

20   COURTROOM DEPUTY:  Yes, but not the indictment.

21   THE COURT:  Okay.  Okay.  So then paragraph two in the

22 plea agreement which says superseding indictment, should that

23 also read second superseding indictment?

24   MR. SOTO:  Yes, Your Honor.

25   THE COURT:  Okay.  So you can write that in and initial

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    it after the hearing.

2            MR. RODRIGUEZ:  Thank you, Your Honor.

3            THE COURT:  Was he placed under oath?

4            COURTROOM DEPUTY:  No.

5            THE COURT:  Place him under oath please.

6            COURTROOM DEPUTY:  Please stand and raise your right

7    hand.

8            CARLOS MARIO JIMENEZ NARANJO, DEFENDANT, SWORN.

9            THE COURT:  Do you understand, sir, that you are now

10   under oath and if you answer any of my questions falsely, your

11   answers may later be used against you in another prosecution for

12   perjury or for making a false statement?

13           THE DEFENDANT:  (Through Spanish Interpreter) Yes, Your

14   Honor.

15           THE COURT:  What is your full name?

16           THE DEFENDANT:  Carlos Mario Jimenez Naranjo.

17           THE COURT:  Have you been known by any other name or

18   names?

19           THE DEFENDANT:  Yes, by the alias of Javier Montanes or

20   Macaco.

21           THE COURT:  How about La Gerencia?  I don't know if I'm

22   pronouncing that right.

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  How about Carlos Mario Jimenez Mejia?

25           THE DEFENDANT:  Yes, Your Honor.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    THE COURT:  And how about Macaco Montanez?

2    THE DEFENDANT:  Yes, Your Honor.

3    THE COURT:  Any other names?

4    THE DEFENDANT:  No, Your Honor.

5    THE COURT:  What is your age?

6    THE DEFENDANT:  44 years old.

7    THE COURT:  Could you explain your education, what was

8    the last grade that you completed in school?

9    THE DEFENDANT:  Third year high school.

10    THE COURT:  Are you currently under the influence of

11    any drug, medication or alcoholic beverage?

12    THE DEFENDANT:  No, Your Honor.

13    THE COURT:  Within the last 24 hours, have you used any

14    drug, medication or alcoholic beverage?

15    THE DEFENDANT:  No, Your Honor.

16    THE COURT:  Have you recently been under the care of a

17    doctor or psychiatrist?

18    THE DEFENDANT:  No, Your Honor.

19    THE COURT:  Have you recently been hospitalized for any

20    reason, including the use of narcotics, medicine, drugs or

21    alcohol?

22    THE DEFENDANT:  No, Your Honor.

23    THE COURT:  The ability to understand the charges

24    brought against you, has that ability been affected at any time

25    by the use of any drug, medication or alcoholic beverage?

1       THE DEFENDANT:  No, Your Honor.

2       THE COURT:  The ability to understand the explanations

3  and advice given to you by your lawyer, has that ability been

4  affected at any time by the use of any drug, medication or

5  alcoholic beverage?

6       THE DEFENDANT:  No, Your Honor.

7       THE COURT:  Have you read a copy of the second

8  superseding indictment which sets forth the written charges made

9  against you in this case or was it read to you?

10      THE DEFENDANT:  Yes, Your Honor.

11      THE COURT:  Do you understand that you have the right

12  to plead not guilty to any offense charged against you and to

13  persist in that plea?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  Do you understand that you would then have

16  the right to a trial by jury in which you would be assisted by a

17  lawyer in your defense and at which you would have the right to

18  see and hear all of the witnesses who would testify against you

19  and have them cross-examined in your defense?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  Do you understand that at a trial, the

22  government cannot force you to testify unless you voluntarily do

23  so in your own defense?

24      THE DEFENDANT:  Yes, Your Honor.

25      THE COURT:  Do you understand that should you decide

1    not to testify at trial, or put on any evidence at trial, that

2    these facts cannot be used against you at trial?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And do you understand that the decision as

5    to whether to testify or not testify in trial is your decision

6    and your decision alone.

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Do you understand that you would have the

9    right to have subpoenas issued to witnesses to compel them to

10   attend the trial and testify on your behalf?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Do you understand that the government would

13   have to prove beyond a reasonable doubt at trial the essential

14   elements of the offenses charged against you?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And do you also understand that all 12

17   jurors must unanimously agree before a finding of guilty can be

18   made?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Do you understand that if you are convicted

21   at trial, you would have the right to appeal my rulings at trial

22   anD your conviction?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Do you further understand that if you enter

25   pleas of guilty and if I accept your pleas of guilty, there will

1    be no trial and you will have waived, or given up, your right to

2    a trial as well as the various rights associated with the trial

3    that I've just described.

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  You are charged by second superseding

6    indictment in Count I that beginning in or about October 2004

7    and continuing through in or about June 2007, the exact dates

8    being unknown to the grand jury, in Miami-Dade County, in the

9    Southern District of Florida and elsewhere, the defendant Carlos

10   Mario Jimenez Naranjo also known as "Macaco", also known as "La

11   Gerencia", also known as "Commander Javier Montanes", also known

12   as "Carlos Mario Jimenez Mejia", also known as "Macaco

13   Montanez", did knowingly and intentionally combine, conspire,

14   confederate and agree with Sammy Humberto Fernandez Navarro and

15   Jesus Maria Alejandro Sanchez-Jimenez, and with other persons

16   known and unknown to the grand jury, to import into the United

17   States, from a place outside thereof, a controlled substance in

18   violation of Title 21, United States Code Section 952(a); all in

19   violation of Title 21, United States Code, Section 963.

20         Pursuant to Title 21, United States Code, Section

21   960(b)(1)(B), it is further alleged that this violation involved

22   five kilograms or more of a mixture and substance containing a

23   detectable amount of cocaine.

24         And in Count 18, that beginning at least as early as in

25   or about September 2006, the exact date being unknown to the

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    grand jury, and continuing until at least on or about September

2    6, 2007, while onboard a vessel subject to the jurisdiction of

3    the United States, the defendants, Carlos Mario Jimenez Naranjo,

4    Marco Julio Londono Vasquez, also known as "Canosito"; Francisco

5    Arturo Ortiz Navarro, also known as "Maestro"; Marcial Gamboa

6    Escobar, also known as "Marcial"; Jacinto Nicolas Fuentes

7    German, also known as "Don Leo"; Andres Felipe Gomez Marulanda,

8    also known as "Marulito"; and First Name Unknown, Last Name

9    Unknown, also known as "Cachaco", did knowingly and

10   intentionally combine, conspire, confederate and agree with each

11   other and with Rosa Edelmira Luna Cordoba, Melbin Caicedo

12   Sanchez, Elkin Dario Guerrero Agamez, Nebardo Antonio Estrada

13   Munoz, Fernando Abuchar Gonzalez, Enot Chaverra Vargas, Elkin

14   Dario Cantillo Salas, Hector Eduardo Munoz, Santander Cortecero,

15   Jesus Maria Alejandro Sanchez-Jimenez, and other persons known

16   and unknown to the grand jury, to possess with intent to

17   distribute a controlled substance onboard a vessel subject to

18   the jurisdiction of the United States in violation of Title 46,

19   United States Code, Section 70503(a); all in violation of Title

20   46, United States Code, Section 750506(b).

21          Pursuant to Title 46, United States Code, Section

22   705068(a), and Title 21, United States Code, Section

23   960(b)(1)(B), it is further alleged that this violation involved

24   five kilograms or more of a mixture and substance containing a

25   detectable amount of cocaine.


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          Would counsel for the government make a representation

2     concerning the facts the government is prepared to prove at

3     trial, please.

4          MR. SOTO:  Yes, Your Honor.

5          If this case had proceeded to trial, the government

6     would have proven the following facts beyond a reasonable doubt.

7          THE COURT:  Let me stop you for one minute, Mr. Soto.

8     Does the court reporter have a copy of the factual proffer?

9          MR. SOTO:  Yes, Your Honor.

10         THE COURT:  Does the interpreter have a copy?  Okay.

11    Go ahead.

12         MR. SOTO:  Carlos Mario Jimenez Naranjo was one of the

13    principal leaders of a Colombian paramilitary and drug

14    trafficking organization known as the Autodefensas Unidas de

15    Colombia, or AUC, which was funded primarily through narcotics

16    proceeds.

17         In 2001, the AUC was designated by the Department of

18    State as a foreign terrorist organization.  On June 2, 2003, the

19    President of the United States designated the AUC as a specially

20    designated narcotics trafficker under the Foreign Narcotics

21    Kingpin Designation Act.

22         In February of 2008, Jimenez Naranjo was himself

23    designated as a specially designated narcotics trafficker under

24    the Act.

25         The AUC earned money by controlling access --

1          THE INTERPRETER:  Sir, sir.  Don't go so fast please.

2          MR. SOTO:  I'm sorry.

3          The AUC earned money by controlling access to coca

4     cultivation regions by taxing cocaine base and hydrochloride

5     production and by providing security for cocaine laboratories.

6          The AUC provided transportation for cocaine shipments

7     within Colombia to move coca base to clandestine cocaine

8     laboratories and finished cocaine from labs to transit points

9     along the coast.

10          THE COURT:  Let me stop you there for a moment.

11          Explain to me how they tax cocaine base and

12     hydrochloride production.  What does that mean?

13          MR. SOTO:  What that means is that they actually had --

14     there were individuals who were -- who paid a fee for use of

15     areas controlled by the AUC.  So --

16          THE COURT:  In Colombia.

17          MR. SOTO:  In Colombia only.  So any cocaine that was

18     produced or in cocaine labs or produced in coca farms, the AUC

19     designated a fee imposed on that cocaine by weight.  By

20     kilogram.  And the amount of the fee changed over time.  So at

21     one point it was $50 per kilogram produced or exported out of a

22     region controlled by the AUC, and I think the number grows as

23     high as $200 per kilogram.

24          THE COURT:  Okay.  Go ahead.

25          MR. SOTO:  The AUC charged transportation groups a tax

1   for access to AUC territory and to provide security for the

2   movement of drugs within Colombia.  Specifically, the Norte del

3   Valle cartel employed the services of the AUC to protect its

4   distribution routes and cocaine laboratories, as well as to

5   provide personal security.

6          From the mid 1990s through 2007, Jimenez Naranjo

7   controlled cocaine production and distribution, maritime

8   seaports, and clandestine air strips in vast areas of Colombia

9   through an army of several thousand men.  Jimenez Naranjo used

10  this paramilitary army to assume and maintain control of areas

11  of Colombia which the organization used to cultivate, process,

12  transport and export cocaine to Central America, Mexico and the

13  United States.

14         In early 2005, Jimenez Naranjo self-surrendered to

15  Colombian authorities in connection with the Colombian Justice

16  and Peace Program.  He remained incarcerated in various

17  facilities in Colombia until his extradition to the United

18  States in May 2008.

19         During the time that Jimenez Naranjo was incarcerated

20  in Colombia, he used codefendant Sanchez-Jimenez, unindicted

21  co-conspirator Hector Duque Ceballos, also known as "Monoteto",

22  and others, to manage the organization's drug trafficking

23  operations.  Sanchez-Jimenez and Duque Ceballos visited Jimenez

24  Naranjo regularly in Santa Fe de la Lita, La Ceja and Itagui, in

25  order to keep him apprised of the organization's drug

1   trafficking operations and profits and to receive direction from

2   Jimenez Naranjo regarding the same.

3          THE COURT:  That was after he surrendered?

4          MR. SOTO:  After he surrendered.

5          THE COURT:  Those are the prisons he was in?

6          MR. SOTO:  Santa Fe de la Lita was a compound in which

7   he and other drug traffickers self-surrendered and were held

8   there in what was a large farm that included a number of other

9   AUC members including Mr. Jimenez Naranjo.  La Ceja was an

10  actual prison and Itagui was an actual prison in Colombia.

11         In 2004, Jimenez Naranjo assigned responsibility to

12  Sanchez-Jimenez and Duque Ceballos, to Choco, a region of

13  Colombia located on the Pacific coast from which Sanchez-Jimenez

14  and others oversaw the organizations of maritime shipment of

15  multi-hundred kilogram and multi-ton quantities of cocaine to

16  Central America and Mexico en route to the United States.

17         Sanchez-Jimenez also oversaw the organization's

18  activities in Antioquia, a region on Colombia's Caribbean coast.

19         At the direction of Jimenez Naranjo, Sanchez-Jimenez

20  also charged narcotics traffickers a fee, or tax, of $100 per

21  kilogram of cocaine for the use of maritime launching points in

22  these areas.  Jimenez Naranjo imposed these taxes in other

23  regions of Colombia including Putumayo, Vichada and the southern

24  region of Bolivar, where Jimenez Naranjo's organization

25  controlled clandestine air strips used to export cocaine from

1   Colombia.

2           Insofar as Count 1, on September 11, 2005, a King Air,

3   model 200 airplane, carrying 1,300 kilograms of cocaine,

4   conducted an emergency landing at Gustavo Rojas Pinilla Airport

5   on the Colombian island of San Andres.  When the Colombian

6   National Police arrived to investigate, the plane was sitting

7   just off of the runway with its engines running.  Witnesses

8   observed two males moving quickly away from the airplane after

9   it touched down.  In the aircraft, Columbia law enforcement

10  observed the cocaine, extra fuel tanks and numerous documents.

11  The documents included flight logs, the names of pilots and the

12  name of the company from which the plane had been purchased.

13          Codefendant Sammy Humberto Fernandez Navarro was one of

14  the individuals identified as a pilot for the aircraft.

15  Fernandez Navarro was arrested by Colombian National Police just

16  outside of the airport as he attempted to drive off in a taxi.

17          The documents found onboard the aircraft corroborated

18  other evidence gathered by law enforcement which confirmed that

19  the plane had been purchased in July 2005 with money that had

20  been wire transferred in six installments from a money exchange

21  business in Mexico known as Casa de Cambio Puebla through a

22  Wachovia bank account located in Miami, Florida.

23          At the time of its purchase in July 2005, the plane was

24  located in Fort Lauderdale, Florida.  Law enforcement later

25  learned that the plane's registry in the United States had been

1    removed in order to facilitate the plane's export to Colombia.

2         According to a government witness, the plane was flown

3    from Fort Lauderdale to Bogota, Colombia for use in a shipment

4    of a significant amount of cocaine.  The individual hired to

5    pilot the plane from Fort Lauderdale to Bogota was instructed to

6    leave the plane on the tarmac in Bogota and return home.  From

7    there, the plane was moved to a clandestine air strip in the

8    southern region of Bolivar where it was loaded with 1,300

9    kilograms of cocaine.  Witnesses confirmed that the plane

10   departed with the cocaine from this clandestine air strip at the

11   direction of an unindicted member of Jimenez Naranjo's drug

12   trafficking organization, and that this airstrip was controlled

13   by codefendant Carlos Mario Jimenez Naranjo.

14        Other witnesses explained that the cocaine seized from

15   the plane belonged to several investors, among them codefendant

16   Carlos Mario Jimenez Naranjo, and was being shipped to a drug

17   trafficking organization in Mexico for distribution in the

18   United States.

19        THE COURT:  When this says codefendant Carlos Mario

20   Jimenez Naranjo, that's the defendant you're referring to?

21        MR. SOTO:  That's a mistake.  It should be defendant,

22   Carlos Mario.

23        THE COURT:  Okay.

24        MR. SOTO:  The plane was in fact en route to a remote

25   air strip in Guatemala near the border of Mexico where the

1  cocaine would be offloaded and then transported into the United

2  States by land.

3      Witnesses explained that the plane piloted by

4  codefendant Fernandez Navarro conducted an emergency landing on

5  San Andres island due to a technical malfunction having to do

6  with gas lines on the plane.  This was later corroborated by

7  observations made by the Colombian National Police upon their

8  examination of the plane.

9      Insofar as Count 18, in late 2006 and early 2007,

10  Jimenez Naranjo sold several multi-hundred kilogram quantities

11  of cocaine to codefendant Francisco Arturo Ortiz Navarro, also

12  known as "Maestro".  These transactions were managed by

13  Sanchez-Jimenez on behalf of Jimenez Naranjo, who was then

14  incarcerated in Colombia at the time.

15      Three of the shipments sold to Ortiz Navarro were

16  seized in international waters by the United States Coast Guard

17  from vessels subject to the jurisdiction of the United States.

18      The first seizure occurred on October 25, 2006 when the

19  United States Coast Guard intercepted the fishing vessel *Camilla*

20  *C,* in international waters off the northwest coast of Colombia.

21  The United States Coast Guard recovered 37 bales containing 900

22  kilograms of cocaine from the *Camilla C.*  Eyewitness testimony

23  identified the fishing vessel *La India* as the boat from which

24  the cocaine was loaded on to the *Camilla C.*

25      Codefendant Enot Chaverra Vargas, a member of

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    codefendant Ortiz Navarro's narcotics transportation

2    organization, was identified as the person who supervised the

3    offload of the cocaine from the fishing vessel *La India* to

4    *Camilla C.*

5         In December 2006, several codefendants, including but

6    not limited to Chaverra Vargas and Ortiz Navarro were

7    intercepted on a judicialized Colombian wire discussing plans to

8    conduct an at-sea transfer of cocaine from one vessel to

9    another.  Testimony from an eyewitness and a cooperating source

10    confirmed that the conversations intercepted on the Colombian

11    wire culminated at in at-sea transfer of the cocaine by

12    codefendant Chaverra Vargas from the fishing vessel *La India* to

13    the fishing vessel *Courageous*, in the early morning hours of

14    December 19, 2006.

15         That same day, the United States Coast Guard cutter

16    *Bear* interdicted the fishing vessel *Courageous* in international

17    waters approximately 144 nautical miles northeast of Colombian

18    territorial waters.  A United States Coast Guard boarding team

19    recovered 30 bales of cocaine weighing 720 kilograms from the

20    vessel.

21         In late April 2007, several codefendants, including

22    Ortiz Navarro, were intercepted on a judicialized Colombian wire

23    discussing plans to conduct another maritime shipment of

24    cocaine.  As before, the conversations intercepted on the

25    Colombian wire culminated in an at-sea transfer of the cocaine

1  sold by the Jimenez Naranjo drug trafficking organization to

2  Ortiz Navarro in or about April 23.

3      On April 26, 2007 the United States Coast Guard Cutter

4  *Tahoma* interdicted the fishing vessel *Captain Brolin* in

5  international waters northeast of Colombian territorial waters.

6  A United States Coast Guard boarding team recovered 95 bales of

7  cocaine weighing 2,000 kilograms from the vessel.  A series of

8  intercepted telephone calls following the seizure confirmed that

9  the cocaine seized by the United States Coast Guard vessel

10  *Tahoma* belonged to codefendant Ortiz Navarro and that Ortiz

11  Navarro had purchased the cocaine from the Jimenez Naranjo drug

12  trafficking organization.

13      And that concludes the proffer, Your Honor.

14      THE COURT:  Do you understand the charges against you?

15      THE DEFENDANT:  Yes, Your Honor.

16      THE COURT:  Do you admit or not admit the facts as

17  stated by the prosecutor?

18      MR. RODRIGUEZ:  They're sufficient facts and basis for

19  the violation.  There may be some small issues, nothing that

20  would interfere with him proceeding with this plea, Your Honor.

21      THE COURT:  Okay.  I need to hear it from him.

22      Do you admit or not admit the facts as stated by the

23  prosecutor in totality and as they relate to Counts 1 and 18 of

24  the --

25      THE DEFENDANT:  Yes, Your Honor.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          THE COURT:  Is what the prosecutor stated correct?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you have any deletions or corrections?

4          MR. RODRIGUEZ:  Judge, it's just a matter of

5    nomenclature and words, and things -- adjectives.  That's all.

6    The substantive facts are correct and those are the things that

7    he and I have discussed.  I've discussed it with Mr. Soto.  It

8    isn't sufficient to affect the proffer.

9          THE COURT:  So give me an example so I understand.

10          MR. RODRIGUEZ:  I knew you were going to do that and I

11    didn't highlight it as we were going.

12          Just give me a second, Your Honor.

13          THE COURT:  Sure.  Take your time.

14          MR. RODRIGUEZ:  Your Honor, I reaffirmed with my client

15    and I've told him this is the government's proffer as to what

16    they believe they could prove at the time.  And as he has said

17    to you, he agrees with that.

18          There were such things as dates of being in one place

19    or another that he was discussing when he said to me hey, the

20    mid '90s, what does that mean.  It's things along those lines

21    that he may have a disagreement, but not as to the facts,

22    jurisdiction and other matters that are in the proffer.

23          THE COURT:  Okay.

24          How do you wish to plead to Counts 1 and 18 of the

25    second superseding indictment?  Guilty or not guilty?

1          THE DEFENDANT:  Guilty, Your Honor.

2          THE COURT:  Are you pleading guilty because you are

3     guilty?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you understand that the mandatory

6     minimum penalty of confinement provided by law for each one of

7     these counts is ten years imprisonment?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And do you understand that the maximum

10    possible penalty of confinement provided by law is up to life

11    imprisonment?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  In addition, following a term of

14    imprisonment exceeding one year, the Court must impose a term of

15    supervised release, such term of supervised release shall

16    commence upon release from imprisonment.  The minimum amount of

17    time in supervised release for each one of these counts is five

18    years, and the maximum amount of time on supervised release for

19    each one of these counts is up to life on supervised release.

20         Do you understand that as well?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Do you understand that if you violate the

23    conditions of supervised release, you can be given additional

24    time in prison?

25         THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The maximum fine that may be imposed
against you for each one of these counts is up to $4 million.
The Court may sentence you to serve a sentence of confinement
and also assess a fine against you.

Do you understand that as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition to the penalties of confinement
and fines, you may be ordered to make restitution and you will
be required to pay a special assessment of $100 for each count
of conviction.

Do you understand that as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the offense to which
you plead guilty are felony offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if your pleas of
guilty are accepted, you will be adjudicated guilty of those
offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you are not a
citizen of the United States, such adjudications will subject
you to removal proceedings by the Bureau of Immigration and
Customs Enforcement pursuant to United States law, and
presumptively you will be removed from the United States as
these are convictions for drug offenses other than possession of

1    30 grams or less of marijuana.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Have you discussed these immigration

4    consequences with your attorney?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And are you satisfied with his services?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Do you understand that the provisions of

9    the sentencing guidelines promulgated by the United States

10   Sentencing Commission will advise the Court in this matter?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Have you and your attorney talked about how

13   the sentencing guidelines might apply to your case?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Do you understand that the Court will not

16   be able to determine the advisory guideline range for your

17   sentence until after the advisory presentence investigation

18   report has been completed, and you and the government have had

19   the opportunity to challenge the reported facts and the

20   application of the guidelines as recommended by the probation

21   officer?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Do you understand that the Court will

24   consider all the sentencing factors provided by law, including

25   the sentencing guidelines?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand that after considering

3    all of these factors, the Court will impose a sentence it finds

4    appropriate, given the statutory minimum and statutory maximums?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do you understand that the sentence imposed

7    may be different from any estimate your attorney may have given

8    you?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that parole has been

11    abolished and if you are sentenced to prison, you will not be

12    released on parole?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Do you understand that under some

15    circumstances, you or the government may have the right to

16    appeal any sentence that I impose?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Are your pleas of guilty being made freely

19    and voluntarily?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Has anyone forced or threatened you or

22    coerced you to plead guilty?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Other than the representations made to you

25    in the plea agreement and the letter agreement, has anyone made

1      any other representations to convince you to plead guilty?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Are you satisfied with your attorney?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Have you had adequate time to fully confer

6      with your attorney, and he with you, about these charges, these

7      proceedings and all matters relating to these charges?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Turning now to the plea agreement, does the

10     interpreter have a copy of the plea agreement?  Yes?  Okay.

11             You agree to plead guilty to Counts 1 and 18 of the

12     second superseding indictment.

13             Count 1 charges you with conspiring to import into

14     United States five kilograms or more of a mixture and substance

15     containing a detectable amount of cocaine; a controlled

16     substance in violation of Title 21, United States Code, Section

17     963.

18             Count 18 charges you with conspiracy to possess with

19     intent to distribute five kilograms or more of a mixture and

20     substance containing a detectable amount of cocaine, a

21     controlled substance while onboard a vessel subject to the

22     jurisdiction of the United States in violation of Title 46,

23     United States Code, Sections 70503(a) and 70506.

24             The government will dismiss the remaining counts of the

25     second superseding indictment as to you after sentencing.

1          You are aware that sentence will be imposed in

2     conformity with the sentencing guidelines and that the

3     applicable guidelines will be determined by the Court, relying

4     in part on the results of a presentence investigation by the

5     probation office, and that this investigation will begin after

6     your guilty plea has been entered.

7          You're also aware that under certain circumstances, the

8     Court may depart from the applicable guideline range and impose

9     a sentence that is either more severe or less severe than the

10    guideline range.

11         Under Paragraph 19 of this plea agreement, you and the

12    government agree to recommend that the Court sentence you to a

13    term of imprisonment of up to 35 years.  Knowing these facts,

14    you understand and acknowledge that the Court has the authority

15    to impose any sentence within and up to the statutory maximum

16    authorized by law for the offenses to which you plead guilty,

17    and you may not withdraw your pleas solely as a result of the

18    sentence imposed.

19         You understand and acknowledge that the Court must

20    impose a minimum term of imprisonment of ten years and may

21    impose a statutory maximum term of imprisonment of up to life,

22    followed by a term of supervised release of no less than five

23    years.

24         In addition, the Court may impose a fine of up to $4

25    million.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          Pursuant to assurances made by the United States to

2     Colombia however, the government has agreed not to seek a

3     sentence of life imprisonment in this case.  This is necessary

4     in order to effectuate the agreement between the governments of

5     the United States and Colombia, reached in connection with your

6     extradition to the United States to face charges in this case.

7          In addition, a special assessment in the amount of $100

8     per count, for a total special assessment of $200, will be

9     imposed on you.  You agree that any special assessment imposed

10    shall be paid at time of sentencing.

11         The government reserves the right to inform the Court

12    and the probation office of all facts pertinent to the

13    sentencing process, including all relevant information

14    concerning the offenses committed, whether charged or not, as

15    well as concerning you and your background, subject only to the

16    express terms of any agreed upon sentencing recommendations

17    contained in this agreement.

18         The government further reserves the right to make any

19    recommendation as to the quality and quantity of punishment.

20         You agree that under the facts and circumstances of

21    this case, there are no factors under Title 18, United States

22    Code, section 3553(a) that would call for a term of imprisonment

23    beneath the advisory guideline range produced by application of

24    the sentencing guidelines.  If application of the sentencing

25    guidelines were to call for a sentence of life imprisonment, the

1    government will recommend that the Court sentence you to a term

2    of years in light of the agreement between the governments of

3    the United States and Colombia, reached in connection with your

4    extradition to the United States to face charges in this case.

5         The government agrees it will recommend at sentencing

6    that the Court reduce by two levels the sentencing guideline

7    level applicable to your offense under section 3E1.1A of the

8    guidelines, based upon your recognition and affirmative and

9    timely acceptance of personal responsibility.

10        If your offense level equals a level 16 or greater, the

11   government agrees that it will recommend that the Court reduce

12   your offense level an additional one level under section 3E1.1b

13   of the guidelines, based upon your timely notification of your

14   intent to plead guilty.  However, the government will not be

15   required to make these sentencing recommendations if you fail,

16   or refuse to make a full, accurate and complete disclosure to

17   the probation office of the circumstances surrounding the

18   relevant offense conduct.  If it is found that you have

19   misrepresented facts to the government prior to entering this

20   plea agreement or if you commit any misconduct after entering

21   into this plea agreement including, but not limited to,

22   committing a state or federal offense, violating any term of

23   release or making false statements or misrepresentations to any

24   governmental entity or official.

25        In addition to the provisions of paragraph nine which I

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1       just summarized which sets forth your eligibility for a downward

2       adjustment for acceptance of responsibility under section 3E1.1

3       of the guidelines, you and the government agree that, although

4       not binding on the probation office or the Court, you will

5       jointly recommend that the Court make the following findings and

6       conclusions as to the sentence to be imposed:

7              Section 2D1.1 of the guidelines is the offense

8       guideline applicable to Counts 1, 18 in this case.  You agree

9       that your violation of Counts 1 and 18 involved 150 kilograms or

10      more of cocaine, and therefore section 2D1.1A yields a base

11      offense level of 38.

12             You qualify for an additional one level upward

13      adjustment under section 2D1.1, application note 16 of the

14      guidelines because the quantity of cocaine attributable to you

15      exceeds ten times the minimum quantity required for level 38.

16             You agree that you possessed at least one dangerous

17      weapon in connection with Counts 1 and 18, and therefore you

18      qualify for a two level upward adjustment under section 2D1.1b1.

19             You agree that you conspired in Count 1 to import a

20      controlled substance into the United States under circumstance

21      in which an aircraft, other than a regularly scheduled

22      commercial air carrier, was used to import the controlled

23      substance.  Therefore, you qualify for a two level upward

24      adjustment based upon section 2D1.1B2A.  No additional specific

25      offence characteristics under Chapter 2 of the guidelines are

1    applicable to your offense conduct.

2         You qualify for a four level upward adjustment for

3    aggravating role pursuant to 3B1.1A of the guidelines.

4         Apart from your eligibility for a downward adjustment

5    for acceptance of responsibility under 3E1.1, no additional

6    upward or downward adjustments under Chapter 3 of the sentencing

7    guidelines are applicable to your offense conduct.

8         In accordance with the findings of fact addressed --

9    strike that.

10        In accordance with the findings of fact addressing your

11   guidelines computations as set forth in A through I of this

12   paragraph which I just read to you, your total base offense

13   level is 44, and that is the sum and total of the

14   recommendations that you and the government will be making

15   regarding your sentence to be imposed.

16        You understand and agree that once you enter your

17   guilty plea and such guilty plea is accepted by the Court, if

18   for any reason you subsequently withdraw your guilty pleas, the

19   factual basis offered by the government in support of your

20   guilty pleas will be fully admissible against you in a trial in

21   this case.

22        You also understand and agree that you waive any and

23   all protections you may have under:  A, Rule 11 F of the Federal

24   Rules of Criminal Procedure; B, section 1B1.8A of the guidelines

25   and C, Rule 410 of the Federal Rules of Evidence with respect to

1    the factual basis offered by the government in support of your

2    guilty pleas.

3         You agree to voluntarily forfeit to the United States

4    and/or the government of Columbia, all property subject to

5    forfeiture under Title 18, United States Code, Section 982;

6    Title 21, United States Code, Section 853; or Title 46, United

7    States Code, Section 70507(a).  Specifically, you agree to

8    forfeit to the United States or to the government of Colombia

9    your interest in any property in your possession or under your

10    control, but constitutes or is traceable to proceeds of your

11    narcotics trafficking.  You agree to enter into a consent order

12    of forfeiture and to fully assist the United States and

13    Colombian Governments in effectuating the surrender of the

14    forfeited assets, and to take whatever steps are necessary to

15    ensure that clear title thereto passes either to the United

16    States or the government of Columbia.

17         You agree not to file a claim, or assist others to file

18    a claim, to any of the forfeited assets in any administrative or

19    judicial proceeding of any third party other than a bonafide

20    innocent third party files a claim to a litigation in the United

21    States or Columbia regarding the properties which you identified

22    are forfeitable, you will assist the governments in defending

23    the forfeiture action.

24         Assets located in Colombia that are forfeited pursuant

25    to this agreement may be used as reparations to Columbian

1    victims of the AUC Violence in Crimes, pursuant to your

2    obligations under the Justice and Peace Act.  You knowingly and

3    voluntarily waive your right to a jury trial on the forfeiture

4    of such assets and waive all constitutional, legal and equitable

5    defenses to the forfeiture of such assets.  You knowingly and

6    voluntarily waive any time or notice requirements in any

7    forfeiture proceeding involved in this property.

8         You further knowingly and voluntarily waive any

9    jeopardy defense or any claim of double jeopardy, whether

10   constitutional or statutory, and agree to waive any claim or

11   defense under the 8th Amendment to the United States

12   Constitution, including any claim of excessive fines.

13        You understand and agree that forfeiture of your assets

14   shall not be treated as satisfaction of any fine, restitution,

15   cost of imprisonment or any other penalty this Court may impose

16   upon you.

17        In exchange for the undertakings made by the United

18   States in this plea agreement, you waive all rights, whether

19   asserted directly or by a representative, to request or receive

20   from any department or agency of the United States any records

21   pertaining to the investigation or prosecution of this case,

22   including, without limitation, any records that may be sought

23   under the Freedom of Information Act, 5, United States Code,

24   Section 922; or the Privacy Act of 1974, 5 United States Code,

25   Section 522(a).

1          You are aware that Title 18, United States Code,

2    Section 3742, affords you the right to appeal the sentence

3    imposed in either or both cases.

4          What does that mean?  In either or both cases?

5          MR. RODRIGUEZ:  I don't know how the Court is going to

6    handle the other agreement, but there is a -- the letter

7    agreement which is more detailed.  There is a -- almost a mirror

8    image plea agreement that's sealed in the District of Columbia

9    and this is the same language that was used.

10         THE COURT:  So that references the case in the District

11   of Columbia.

12         MR. RODRIGUEZ:  In Washington, D.C.

13         MR. SOTO:  may I have a moment, Your Honor?

14         THE COURT:  Yes.

15         MR. RODRIGUEZ:  Just give us a second, Your Honor?

16         THE COURT:  Yes.

17         MR. RODRIGUEZ:  judge, we have a recommendation.

18         THE COURT:  Yes.

19         MR. RODRIGUEZ:  We would ask that the Court eliminate

20   the last five words of the first sentence of paragraph 15.

21         THE COURT:  So it will end after "imposed"?

22         MR. RODRIGUEZ:  So it will say "the defendant has the

23   right to appeal the sentence imposed", okay.  We'll take the

24   first four letters.  The last four out.

25         THE COURT:  Okay.  Okay.  I'll let you do that and

1    initial it.  Okay.

2         You are aware that Title 18, United States Code,

3    Section 3742 affords you the right to appeal the sentence

4    imposed.

5         Acknowledging this, in exchange for the undertakings

6    made by the United States in this plea agreement, you waive all

7    rights conferred by Title 18, United States Code, Section 3742

8    to appeal any sentence imposed, including any restitution order,

9    or to appeal the manner in which sentence was imposed, unless

10   the sentence exceeds the maximum permitted by statute or is the

11   result of an upward departure from the guideline range the Court

12   establishes at sentencing.

13        You further understand that nothing in this agreement

14   shall affect the government's right and/or duty to appeal as set

15   forth in Title 18, United States Code, Section 3742(b); however,

16   if the government appeals your sentence under Section 3742(b),

17   you shall be released from your waiver of appellate rights.

18        You understand that although you will be sentenced in

19   conformity with the sentencing guidelines, by this agreement you

20   waive the right to appeal the sentence on the basis that the

21   sentence is a result of an incorrect application of the

22   guidelines.

23        I have a problem with that sentence, because I don't

24   know if he's going to be sentenced in conformity with the

25   sentencing guidelines.  The guidelines are now advisory.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          MR. RODRIGUEZ:  May be sentenced.

2          THE COURT:  You're going to change that to may?  Okay.

3     So let me reread that sentence then as amended by the parties.

4          You understand that although you may be sentenced in

5     conformity with the sentencing guidelines, by this agreement you

6     waive the right to appeal the sentence on the basis of the

7     sentence is a result of an incorrect application of the

8     sentencing guidelines.

9          You further waive any right to file any motion or make

10    any claim whether under Title 28, United States Code, Sections

11    2255, 2254, 2241, or any other provision of law to collaterally

12    attack your conviction, your sentence or the manner in which

13    sentence was imposed, unless the sentence exceeds the maximum

14    permitted by statute.

15         You confirm that you are guilty of the offenses to

16    which you are pleading guilty; that your decision to plead

17    guilty is the decision that you have made, and that nobody has

18    forced, threatened or coerced you into pleading guilty.

19         MR. RODRIGUEZ:  Your Honor, if I may, and I apologize

20    for stopping you, if we could go back to paragraph 16.

21         THE COURT:  Yes.

22         MR. RODRIGUEZ:  And I would ask Mr. Soto to consider

23    adding the word "or treaty" at the end, because we have the

24    unique situation here in that the treaty may limit the Court on

25    the extent of sentence.  And here it says that he waives all his

1   rights.

2          THE COURT:  I'm not sure that it limits the Court.  I

3   think it limits -- if you want to amend that, that's fine.  But

4   I am not sure that the treaty limits the Court.  As I read your

5   agreement, it limits -- and I may or may not agree with what the

6   recommendation is, but it limits the recommendation that the

7   government recommends.

8          MR. RODRIGUEZ:  i'm not going to disagree, but under

9   the rule of speciality --

10         THE COURT:  You may or may not be right, it would have

11  to be a determination that I make..

12         MR. RODRIGUEZ:  What I'm saying only -- since it

13  doesn't affect the Court, would it be possible just to add the

14  word "or treaty"?  Or if not, I'll leave it as that.

15         MR. SOTO:  Can I read it for a moment?

16         THE COURT:  Yeah.  If you want to amend it to include

17  that, that's up to you and I don't have a problem with your

18  doing that.

19         MR. SOTO:  Your Honor, this doesn't -- my reading of

20  this doesn't bind the Court, the defendant is merely waiving his

21  right in connection with the sentence imposed, if that sentence

22  exceeds the maximum permitted by statute or the agreement with

23  respect to his extradition.  It doesn't bind the Court.

24         THE COURT:  No, I agree.  This is his waiver and if

25  you, the parties, want to amend it, that's up to you.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          MR. SOTO:  I think we'll amend it by adding "unless the

2     sentence exceeds the maximum permitted by statute or any

3     agreement between the governments of the United States and

4     Colombia in connection with the defendant's extradition".

5          THE COURT:  You agree, Mr. Rodriguez?

6          MR. RODRIGUEZ:  Yes, Your Honor.

7          THE COURT:  Okay.  So I'm actually going to write that

8     in.  Okay?  No, I have it.

9          MR. RODRIGUEZ:  That's right, you have it now.

10         THE COURT:  And I'll strike the prior reading of the

11    paragraph and read it again.

12         Now, before I go back to the plea agreement beginning

13    with paragraph 16 as now amended by the parties, I just want to

14    make sure that I state for the record as I read the agreement

15    with the -- by the parties, the United States government, the

16    executive branch, has agreed with the government of Colombia

17    that they will not seek life imprisment in order to extradite

18    the defendant from Colombia to the United States.  At this

19    juncture, that does not bind the judicial branch, meaning the

20    Court, though I would certainly be mindful and consider the

21    position of the United States government executive branch, and

22    if you can provide authority to me and convince me that I am

23    bound by that, I would consider that as well, Mr. Rodriguez.

24    And I may find or not find -- strike that.

25         As I understand the parties' agreement, and correct me

1    please if I'm wrong, that the government will -- the agreement

2    is that in order for the Colombian government to agree to

3    extradite the defendant from Colombia to the United States to

4    face the charges of this case, the government of -- the

5    executive branch government of the United States agree that they

6    will not seek life imprisonment but rather a term of years.  Is

7    that correct?

8              MR. SOTO:  That is correct, Your Honor.

9              THE COURT:  You agree, Mr. Rodriguez.

10             MR. RODRIGUEZ:  Yes, Your Honor.

11             THE COURT:  Okay.  Now, if you want to, at sentencing,

12    provide authority to me how that binds me, you may do so and I

13    would consider at that time and if I need to reserve on that

14    portion of the plea agreement, I will do so.  But that at this

15    juncture is my understanding that it's the recommendation by the

16    government of the United States, the executive branch to the --

17    that they made an agreement with the government of Colombia.

18    The Court has not made any agreement with the government of

19    Columbia.

20             So it is my position at this juncture that I am not

21    bound by that agreement.  I would certainly consider the

22    position of the parties and I understand, of course, that there

23    are certain diplomatic and national security positions that the

24    parties have, especially the executive branch of the United

25    States government as to their representations to the government

1       of Colombia.

2              Is there any disagreement as to that?

3              MR. SOTO:  No, Your Honor, there's no disagreement on

4       my part.  I would, however, note that, of course, any decision

5       by the Court not to abide by the agreement made between the

6       governments of the United States and Colombia may have an affect

7       on our ability to extradite individuals from that country in the

8       future.

9              THE COURT:  I understand that.  Do you agree,

10      Mr. Rodriguez?

11             MR. RODRIGUEZ:  You articulated it correctly, Your

12      Honor.  It would be an issue, if necessary, to be dealt with at

13      sentencing under the rule of speciality at that time, if it were

14      to be an issue.

15             THE COURT:  So as we proceed with the sentencing, and

16      before I go back to continuing with the summarization of the

17      substance of the plea agreement -- well, I guess the best thing

18      for me to do is to reserve on whether or not I am bound and then

19      that will give you an opportunity to argue to me that I am bound

20      if, in fact, under the law I am bound.  But I would reserve on

21      that issue for purposes of accepting this plea agreement.

22             MR. RODRIGUEZ:  Thank you, Your Honor.  We have no

23      objection.  That's probably the most prudent way to approach it.

24             MR. SOTO:  But just so that we're all on the same page

25      here, I don't want there to be any argument in the future that

1    the Court's position now to reserve ruling on whether the Court

2    is bound, as opposed to just the Department of State, in any way

3    affects this plea agreement coming to a completion and this

4    hearing to a completion once we've completed this hearing.

5        I think the only thing that paragraph does is permits

6    Mr. Jimenez Naranjo to file a 2255 or writ of habeas corpus or

7    other collateral attack in the event that the Court decides to

8    impose a sentence higher than that agreed -- that would not

9    abide by the agreement between the United States and the

10   government of Colombia.

11       THE COURT:  I would agree with that as far as paragraph

12   16 is concerned.

13       As far as my acceptance of the plea, this is not a

14   reservation as to that issue under Rule 11, but is a reservation

15   so that the defendant can preserve his position.  I'm certainly

16   willing to consider any position that either side puts forth,

17   and I understand the position of the executive branch of the

18   United States government that if I didn't abide by that, that

19   that might affect their relationship with the government of

20   Colombia for future extraditions, and I understand that the

21   defendant wants to have an opportunity to convince me that's the

22   appropriate thing to do and to also convince me that under the

23   law, I may be bound and I would certainly consider that.

24       Is that sufficient for preserving the argument for

25   sentencing for everyone?

1          MR. SOTO:  yes, Your Honor.

2          MR. RODRIGUEZ:  Yes, Your Honor on behalf of

3     Mr. Jimenez.

4          THE COURT:  Okay.  I just want to make sure we're all

5     on the same page.

6          All right.  Now, turning back to page eight of the plea

7     agreement, paragraph 16 is now amended by the parties.

8          The defendant further waives any right to file any

9     motion or make any claim, whether under Title 28, United States

10    Code, sections 2255, 2254, 2241 or any other provision of law to

11    collaterally attack his conviction, his sentence or the manner

12    in which sentence was imposed, unless the sentence exceeds the

13    maximum permitted by statute or any agreement between the

14    governments of the United States and Colombia in connection with

15    the defendant's extradition.

16         You confirm that you are guilty of the offenses to

17    which you are pleading guilty, and that your decision to plead

18    guilty is the decision you have made and that nobody has forced,

19    threatened or coerced you into pleading guilty.

20         You confirm that this agreement has been translated

21    into your native language and either that you have read it or

22    that it has been read to you.

23         You affirm that you have discussed the matter of

24    pleading guilty thoroughly with your attorneys.

25         You further affirm that your discussion with your

1    attorneys have included discussion of possible defenses that you

2    may raise if this case were to go to trial, as well as possible

3    issues and arguments you may raise at sentencing.

4         You additionally affirm that you are satisfied with the

5    representation provided by your attorneys.

6         You accordingly affirm that you are entering into this

7    agreement knowingly, voluntarily and intelligently and with the

8    benefits of full, complete and effective assistance by your

9    attorney.

10        You accordingly agree that by entering into this

11   agreement, you waive any right to file any motion or make any

12   claim whether under Title 28, United States Code, Sections 2255,

13   2254 or 2241, or any other provision of law that contests the

14   effectiveness of your counsel's representation up to the time of

15   the entry of your guilty pleas.

16        The government agrees to recommend that the Court

17   recommend to the United States Bureau of Prisons that you

18   receive credit for time served while in custody in Colombia

19   pending extradition to the United States on the charges in this

20   case.

21        Now, as this paragraph is concerned, and I will -- I'm

22   just bringing this up to so the parties can be prepared to

23   present to me the status of this issue at sentencing, it has

24   been my understanding in the past that the Bureau of Prisons

25   will not grant credit for time served for time served outside of

1       the country.  For other cases that I've had from Colombia.  If

2       you want -- if that's not correct, and they will, that's fine.

3       But I'm just putting you on notice that that's been what's been

4       represented to me in the past.

5               MR. RODRIGUEZ:  I think that's -- the representation

6       made to the Court may have been slightly incorrect.  There is a

7       statute that I know starts with 35 something that specifically

8       addresses this.  We probably maybe should have put it into the

9       agreement, but there's a statute that allows the Court to make

10      that finding at sentencing, if the person was detained for the

11      purposes -- there's two things here.  If the person was detained

12      to be brought to the United States, that's in the statute.  Then

13      there's a question as to any other times that the person was

14      detained in Colombia whether the Bureau of Prisons would then

15      consider it.  So you're right in some aspects, Your Honor.  But

16      this is the recommendation of the parties to the Court and it's

17      something that we can address at sentencing.

18              THE COURT:  No, that's fine.  I don't have a problem

19      with the recommendation.

20              Okay.  Turning back to paragraph 19, based upon the

21      various recommendations contained in this agreement, the parties

22      agree that your offence level under the guidelines should equal

23      an offense level of 44, which provides for a low end sentence of

24      life imprisonment.  Pursuant to its agreement with the

25      government of Colombia, however, the United States cannot

1    recommend a sentence of life imprisonment as a consequence of

2    your guilty plea in this case.  The parties therefore agree to

3    jointly recommend that the Court sentence you to a term of

4    imprisonment of up to 35 years.

5         You are aware that sentence has not yet been determined

6    by the Court.

7         You are also aware that any estimate of the probable

8    sentencing range or sentence that you may receive, whether that

9    estimate comes from your attorney, the government or the

10   probation office, it is a prediction, not a promise and is not

11   binding on the government, the probation office or the Court.

12        You understand further that any recommendation that the

13   government makes to the Court as to sentencing, whether under

14   this agreement or otherwise, it is not binding on the Court and

15   the Court may disregard the recommendation in its entirety.

16        You understand and acknowledge that you may not

17   withdraw your pleas in -- are you striking that language?

18        MR. SOTO:  Your Honor, we would like the sentence to

19   read "the defendant understands and acknowledges as previously

20   acknowledged in paragraph 2 above that the defendant may not

21   withdraw his plea in this case based upon the Court's decision".

22   Okay?  So just change "in either or both cases" to just "this",

23   okay?

24        THE COURT:  Okay.  You understand and acknowledge, as

25   previously acknowledged in paragraph 2, that you may not

1    withdraw your pleas in this case based upon the Court's decision

2    not to accept a sentencing recommendation made by you, the

3    government or a joint recommendation made by both you and the

4    government.

5         This is -- this ten page agreement is the entire

6    agreement and understanding between you and the United States.

7    There are no other agreements, promises, representations or

8    understandings unless contained in a letter from the United

9    States Attorney's Office, executed by all parties and counsel

10   prior to the change of plea.

11        If you would, Mr. Soto, give us a summary and synopsis

12   of the letter agreement.

13        MR. SOTO:  Yes, Your Honor.  There's a letter agreement

14   dated June 21, 2010 which addresses additional promises and

15   understandings made between the United States and defendant.

16   Two components, Your Honor; sentence and potential cooperation.

17   There are no other letter agreements between the parties.

18        As relates to the defendant's sentence, the parties

19   agree that in addition to the agreement we have in which the

20   United States will not recommend a sentence of more than 35

21   years, despite the guidelines range of life to life, that the

22   parties further agree that they will recommend to the Court that

23   it impose a sentence in this case to run concurrently with that

24   of United States versus Carlos Mario Jimenez Naranjo, case

25   number 05-235, which was filed in the United States District

1    Court for the District of Columbia.

2            So we're going to ask that you impose a sentence in

3    this case that it run concurrently with the sentence imposed in

4    that case.  The defendant understands that you're not bound by

5    that and that it's merely a recommendation that we'll be making

6    to you.

7            The second component relates to cooperation and in

8    that, the defendant agrees that he shall cooperate with the

9    United States Attorney's Office for the Southern District of

10   Florida; that he'll provide truthful and complete information

11   and testimony and any other evidence requested by my office; and

12   that he will appear at any such hearings, grand jury proceedings

13   or other judicial proceedings as required by my office.

14           He understands that my office reserves the right to

15   assess the nature and extent of his cooperation and to make a

16   recommendation to the Court in connection with a motion under

17   guideline section 5K1.1 or Rule 35 reflecting his substantial

18   assistance if our office believes that he's provided substantial

19   assistance.

20           The letter agreement also says that nothing in this

21   agreement or the plea agreement precludes the defendant from

22   meeting with -- or rather with continuing to meet his

23   obligations under the Justice and Peace Law, which is a

24   provision of Colombian law.

25           He agrees, however, that any information or assistance

1    he provides to the Colombian government in connection with the

2    Justice and Peace Program shall not provide a basis for a

3    downward departure or reduction of his sentence under Rule 5K1.1

4    or Rule 35.

5         The defendant understands and agrees that the United

6    States Attorney's Office for the Southern District of Florida's

7    assessment of the nature and value, timeliness, truthfulness and

8    accuracy of his cooperation shall be binding insofar as the

9    appropriateness of my office's filing of any such motion and

10   therefore he understands and agrees that making this assessment

11   and determination whether to file a motion under either Rule

12   5K1.1 or Rule 35, my office is in no way bound by any

13   assessments, statements or representations made by other offices

14   or officials.  However, we will be making a recommendation

15   consistent with any recommendation made by the office of the

16   narcotics and dangerous drugs section in the District of Florida

17   if filed in connection with the other case, that being United

18   States versus Carlos Mario Jimenez Naranjo, case number 05-235.

19            THE COURT:  District of Florida?

20            MR. SOTO:  Did I say district of Florida?

21            THE COURT:  Yeah.

22            MR. SOTO:  In the District of Colombia.  In other

23   words, if the narcotics and dangerous drugs section in the

24   District of Columbia files a motion under Rule 35 or 5K1.1, we

25   will make a similar recommendation to this Court in connection

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    with this case for a reduction under Rule 5K1.1 or Rule 35.

2    However, the defendant understands that Your Honor is not bound

3    by any recommendation that we make to reduce his sentence at all

4    or in the same way as any reduction imposed in the D.C. case.

5         The defendant further acknowledges that he has been

6    advised that my office does not intend to make a motion to

7    reduce his sentence in cases where the defendant cooperates with

8    this or any other US Attorney's Office with the exception of

9    NDDS, that being the narcotics and dangerous drugs section,

10   unless the defendant, at a minimum, provides assistance in the

11   investigation or prosecution of criminal activity that is at

12   least equivalent to the seriousness and culpability of his

13   criminal activity in this case, and the harm caused by such

14   criminal activity as reflected in the factual basis I read to

15   the Court during his change of plea hearing.

16        The defendant further understands and acknowledges that

17   this office has made no promises or representations as to

18   whether at some later point it might make a motion to reduce his

19   sentence under a Rule 5K1.1 or Rule 35.  He acknowledges that

20   nothing in this agreement may be construed to require this

21   office to file any such motion unless such a motion is first

22   filed by NDDS.

23        And finally, the defendant further understands and

24   acknowledges that the Court is under no obligation to grant a

25   motion for reduction of sentence based upon either provision

1    5K1.1 or Rule 35 should the government exercise its discretion

2    to file any such motion.

3           The defendant also understands that the Court is under

4    no obligation to reduce the defendant's sentence because of the

5    defendant's cooperation.

6           That concludes the letter agreement, Your Honor.

7           THE COURT:  All right.  Turning back to the plea

8    agreement, is this your signature on the plea agreement, sir?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And you initialed each page as well?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Did you read the agreement before you

13   signed it or was it read to you before you signed it?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Did you discuss fully the plea agreement

16   with your attorney before you signed it?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Did you understand all the terms of the

19   plea agreement before you signed it?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Do you understand that in paragraph 15 on

22   page seven, that you are giving up your right to appeal your

23   sentence?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Have you fully discussed this appeal waiver

1    with your attorney?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And are you satisfied with his services?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Are you entering into this waiver of your

6    appellate rights freely and voluntarily?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And do you understand that in paragraph 16,

9    on page eight, you are giving up your right to -- strike that.

10             You are giving up your rights to collaterally attack

11   your conviction or your sentence or the manner in which sentence

12   was imposed, unless the sentence exceeds the maximum permitted

13   by statute or any agreement between the governments of the

14   United States and Colombia in connection with your extradition.

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Have you fully discussed this waiver of

17   your collateral attack rights with your attorney?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And are you satisfied with his services?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Are you entering into this waiver of your

22   collateral attack rights freely and voluntarily?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  And do you understand that in paragraph 17,

25   you are giving up your rights to collaterally attack your

1   conviction or your sentence based upon ineffective assistance of

2   your counsel's representation to -- strike that.  Let me ask

3   that question again.

4         Do you understand that in paragraph 17, you are giving

5   up your rights to collaterally attack your conviction based upon

6   the ineffective assistance of your counsel?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Have you fully discussed this collateral

9   attack waiver with your attorney?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  And are you satisfied with his services?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Have you entered into this waiver of your

14   collateral attack rights freely and voluntarily?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  The terms that I summarized to you,

17   including the changes that your attorney and the government

18   attorney made during the hearing to this agreement, are those

19   the terms of your plea agreement with the government as you

20   understand them?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  And did you also sign the letter agreement?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Did you read the letter agreement before

25   you signed it or was it read to you before you signed it?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Did you discuss fully the letter agreement

3     with your attorney before you signed it?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Did you understand all the terms of the

6     letter agreement before you signed it?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  The terms summarized by the prosecutor, are

9     those the terms of your letter agreement with the government as

10    you understand them?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Has anyone made any other or different

13    promises or assurances to you in an effort to induce you to

14    enter into the plea agreement, enter into the letter agreement

15    and enter pleas of guilty in this case?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Has anyone threatened you or tried to in

18    any way to force you to enter into the letter agreement, enter

19    into the plea agreement and enter pleas of guilty in this case?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  Do you understand if I accept your pleas of

22    guilty and the sentence that I give you is more severe than you

23    expected, you will still be bound by your plea agreement, still

24    be bound by your letter agreement, still be bound by your pleas

25    of guilty and you will have no right to withdraw them?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Mr. Rodriguez, is this your signature on

3    the plea agreement?

4          MR. RODRIGUEZ:  it is Your Honor.

5          THE COURT:  And did you sign the letter agreement as

6    well?

7          MR. RODRIGUEZ:  Yes, Your Honor.

8          THE COURT:  And Mr. Soto, is this your signature on the

9    plea agreement?

10          MR. SOTO:  Yes, Your Honor.

11          THE COURT:  And you sign the letter agreement as well?

12          MR. SOTO:  Yes, Your Honor.

13          THE COURT:  Mr. Rodriguez, are you satisfied that

14    pleading guilty to the charges is in the best interest of your

15    client considering all the circumstances in this case?

16          MR. RODRIGUEZ:  Yes, Your Honor.

17          THE COURT:  And do you feel that there would be

18    sufficient evidence upon which to convict the defendant of these

19    charges?

20          MR. RODRIGUEZ:  Yes, Your Honor.

21          THE COURT:  Mr. Jimenez, do you have any questions,

22    sir, about the possible consequences of your pleas of guilty?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Do you understand fully all of the possible

25    consequences of your pleas of guilty?

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  It is the finding of the Court in the case

3     of United States of America versus Carlos Mario Jimenez Naranjo

4     that the defendant has entered into a waiver of his appellate

5     rights and his collateral attack rights knowingly, freely and

6     voluntarily after full consultation with his attorney and

7     without coercion or duress.

8          It is further the finding of the Court in the case of

9     United States of America versus Carlos Mario Jimenez Naranjo

10    that the defendant is fully competent and capable of entering

11    informed pleas; that the defendant is aware of the nature of the

12    charges and the consequences of the pleas, and that the pleas of

13    guilty are knowing and voluntary pleas supported by an

14    independent basis in fact containing each of the essential

15    elements of the offenses.  The pleas are therefore accepted and

16    the defendant is now adjudicated guilty of Count 1 and 18 of the

17    superseding indictment.

18         A written advisory presentence investigation report

19    will now be prepared by the probation office to assist the Court

20    in sentencing.  You will be asked, sir, to give information for

21    the report, and your attorney may be present if you wish.  The

22    Court shall permit the defendant and counsel to read the

23    advisory presentence investigation report, file any objections

24    to the report for the sentencing hearing.  The defendant and his

25    counsel shall be afforded the opportunity to speak on behalf of

1    the defendant at the sentencing hearing.  At this time, I'm

2    going to refer the defendant to the probation office for an

3    advisory presentence investigation report.  He's to be remanded

4    to the Bureau of Prisons pending a sentencing date and time

5    which Patricia will give to us now.

6            COURTROOM DEPUTY:  November 8th at 4:30.

7            THE COURT:  When is the District of Columbia case set?

8            MR. RODRIGUEZ:  Judge, we were just discussing that.

9    That is open and there's no reference to it, which I'm going to

10   ask the Court that there be no reference in PACER to any of

11   these proceedings until after it is unsealed.  But it's --

12           THE COURT:  Well, the transcript is sealed in this

13   matter and any docket entries are sealed in this matter.

14           MR. RODRIGUEZ:  Judge, I know.  But my understanding,

15   there is no entries as to anything that's going on in the

16   District of Columbia including his -- he's already pled guilty.

17   He's pled guilty to a mirror image of this.  He's pled to that

18   indictment.

19           THE COURT:  Is that a United States Marshal that just

20   came in

21           MR. RODRIGUEZ:  Yes.

22           THE COURT:  Okay.  Thank you.

23           MR. RODRIGUEZ:  He's pled guilty in Washington D.C.

24   prior to coming to this district.  That sentence is held open

25   and there is no reference to the plea, possible sentence, any

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    dates or anything in PACER.  We were just discussing this very

2    briefly --

3            THE COURT:  That's not how we handle our dockets here.

4            MR. RODRIGUEZ:  i'm not suggesting, but to -- I'm not

5    saying we shouldn't go forward with sentencing and setting it,

6    but any reference to it in PACER in essence violates the entire

7    spirit of the reason everything is sealed.

8            THE COURT:  I don't deal with PACER, so I'm not sure I

9    understand what you mean any reference to PACER.

10           MR. RODRIGUEZ:  what I'm saying, for example, there's

11   no reference --

12           THE COURT:  There won't be any date that comes up

13   anywhere.  Every document -- I entered an order sealing these

14   proceedings.  It will continue through -- I believe my order is

15   -- let me check.  Okay.  I only have the first page, Patricia.

16   I only have the first page of the order.  Okay.  I don't have

17   the entire order that was issued by me in granting a motion to

18   seal.  I see the government's request and with your agreement,

19   Mr. Rodriguez, was that all of the proceedings be sealed in this

20   matter.  So I'm going to have Patricia pull the entire order, I

21   will review it, but it's my understanding -- and as you recall,

22   this was, after quite a bit of input by the parties and

23   examination by the Court, this was not just something that was

24   done in a pro forma fashion by the Court.  I required quite a

25   bit of documentation by the parties that none of the information

1    concerning the actual entries will appear on CM/ECF, PACER or

2    otherwise including the date of sentencing.  Everything will

3    just come up as sealed documents.  That's my understanding.

4         MR. RODRIGUEZ:  That's fine, Your Honor.

5         THE COURT:  And if there's anything -- once I look at

6    the order, if there's anything that indicates otherwise, I would

7    notify the parties and have you come in for a status.

8         MR. RODRIGUEZ:  And what time is that, Your Honor.

9         COURTROOM DEPUTY:  4:30.

10         THE COURT:  November 8th at 4:30.  My question though

11    --

12         MR. RODRIGUEZ:  In an abundance of caution, could we

13    maybe schedule additional time rather than 4:30 taking you late?

14         THE COURT:  You think it's going to take some time?

15         MR. RODRIGUEZ:  In an abundance of caution.  May not be

16    necessary, but --

17         THE COURT:  Give me another date with more time.  Do I

18    have another date with more time?  I'm very booked.

19         MR. RODRIGUEZ:  Your dance card has always been that

20    way.  I know that.  That wheel isn't equitable.

21         THE COURT:  I somehow have -- I seem to have more

22    pending defendants than -- more pending criminal defendants than

23    any of my colleagues for, I don't know, the last two years.

24         MR. RODRIGUEZ:  Before even that.

25         THE COURT:  Before that also.  But now, you know,

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    certainly for the last two years, I am always at that end of the

2    spectrum somehow.

3              COURTROOM DEPUTY:  The 15th, Judge, at 2:30.

4              THE COURT:  That's fine.  The 15th at 2:30.

5              MR. RODRIGUEZ:  Judge --

6              THE COURT:  We can schedule -- that's not good for you?

7              MR. RODRIGUEZ:  Eleventh Circuit, I have an oral

8    argument in Atlanta on the 15th.

9              COURTROOM DEPUTY:  The 22nd?

10             MR. RODRIGUEZ:  We're here.

11             THE COURT:  That's Thanksgiving week, I think.  Is that

12   okay with everyone?  What time?

13             COURTROOM DEPUTY:  At 2:30.

14             THE COURT:  Okay.  That's fine.

15             Let me just say this:  You have agreed in the letter

16   agreement to recommend that I issue a concurrent sentence.  So

17   it's going to be somewhat important to me, if you're going to be

18   making that recommendation to me for me to make a determination

19   whether I agree with that or not, for there to have been a

20   sentence in the District of Columbia.  Otherwise, it has to be

21   the other way around.  But, I mean, that's an issue we can take

22   up at that time or you can let me know as we get closer to the

23   November date as to what the status is in the District of

24   Columbia.

25             MR. RODRIGUEZ:  i can assure the Court that it won't

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1   get done prior to yours and this is something that we discussed.

2   We may be at a difference of opinion on how it's to go.   I

3   always assume that was a precursor or prerequisite.  Mr. Soto

4   believes that the Court can go forward and then he'll go back to

5   D.C.  But I think it's something we can discuss and advise the

6   Court.  But I think we should keep it as it is.

7        THE COURT:  Okay.  That's fine.  I'm just putting you

8   on notice as far as what you have agreed to as far as to

9   recommend to me in the letter agreement that if you're going to

10   be asking me to give a concurrent sentence to some -- to another

11   court that has not yet sentenced, that is a somewhat difficult

12   proposition for me to do.

13        MR. SOTO:  Your Honor, my understanding is that the

14   plea agreement in D.C. also asks the court in that case to have

15   its sentence run concurrently with this one.  So I think --

16        THE COURT:  Yeah, I don't have a problem doing it that

17   way if they haven't sentenced.  But as far as an open-ended my

18   sentence is going to run concurrent to another sentence, unless

19   I know what that sentence is, it's hard for me to make a

20   decision on it.

21        MR. RODRIGUEZ:  And what I anticipate happening, just

22   to cut to the quick, is that the Court will impose the sentence.

23   I'm going to assume that he will be at some time writ'd to D.C.

24   And if there is any consideration for substantial assistance, it

25   will be done pursuant to Rule 35 rather than a 5K1, which would

1    be addressed here anyway.

2         So in the hypothetical, if the Court gave X amount of

3    time, then that could be considered by the D.C. court.  Then

4    later at some time possibly if the government sees fit, there

5    will be a Rule 35 which would be then filed in both districts.

6         THE COURT:  I understand what you're saying.  But I'm

7    sure you're aware that unless there's a Rule 35, I would lose

8    jurisdiction after the 14 days to make any changes as to whether

9    it runs concurrently to any other sentence or not.  If there's a

10   Rule 35 and it comes back to me, then that -- and I know you're

11   aware of that, that that would then give me jurisdiction to

12   reconsider the concurrency element of it.

13        MR. SOTO:  I'm not sure that that's entirely accurate.

14   I believe that on a Rule 35, the Court's only authority is with

15   respect to a reduction based upon cooperation.  I'm not sure --

16   I have to research that issue whether the Court can then impose

17   the sentence so that it runs concurrent with the sentence in

18   another district.

19        THE COURT:  I'll leave you to research that.  I would

20   think, just off the top of my head, and I have not looked at the

21   case law on it, that I have as much full reign as determining

22   what the appropriate sentence is and determine how it runs.  But

23   I would certainly consider any arguments you make.  But I just

24   wanted to make the parties aware that in going forward with my

25   sentence, that I'm going to find it difficult to grant your

1    request to have it run concurrent to a sentence that has not yet

2    been imposed.  If it's a mirror agreement in D.C. and you want

3    to handle it through D.C. if I sentence first, that's fine.  But

4    I'm just putting you on notice.

5           MR. RODRIGUEZ:  i think it's something we'll discuss.

6           MR. SOTO:  Your Honor, just -- the reason I mention

7    that there's also the same agreement in D.C. is that my

8    interpretation of that was that whoever goes -- wherever the

9    defendant is first sentenced, obviously that recommendation

10   could not be made to the Court at that time.  But that would be

11   handled anyway because there's a similar agreement in the other

12   district where we would have to make that recommendation.

13          THE COURT:  That's fine.

14          MR. SOTO:  So we would just withdraw it or not make it

15   in the first case.

16          THE COURT:  That's fine.  I understand that.  And if

17   that's the way we proceed, I don't have a problem with that.  I

18   just want to make you aware of what my position would be if in

19   fact D.C. had not yet sentenced.

20          MR. SOTO:  Sure.  Thank you, Your Honor.

21          THE COURT:  Okay.  So there are a number of changes in

22   the plea agreement.

23          MR. SOTO:  May I approach?

24          THE COURT:  Yes.  Are there any other matters that we

25   need to take up today?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          MR. SOTO:  nothing further from the government.

2          MR. RODRIGUEZ:  No.  And thank you very much, Your

3     Honor.

4          THE COURT:  Okay.  We're in recess for the day.

5          (PROCEEDINGS CONCLUDED)
                    * * * * *

6

7                    C E R T I F I C A T E
      I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

8

9

10

11
      _____          /s/ Dawn M. Whitmarsh
12    Date                              DAWN M. WHITMARSH, RPR

13

14

15

16

17

18

19

20

21

22

23

24

25


                 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                    TRANSCRIPT PRODUCED BY COMPUTER